Good morning. May it please the court. I am Jordan Essington on behalf of Plaintiff and Appellant Damian Langere. I would like to reserve three minutes for rebuttal. Today I will discuss the unbriefed issue that the court requested discussion on Article 3, standing for public injunctive relief. I will discuss why it's not relevant to the issues before the court. I will also discuss why Langere adequately alleges it. And alternatively, we would respectfully request leave to amend to address this sufficiency issue being raised for the first time. But before you get to that, why do we have appellate jurisdiction? Because there are no Baker concerns implicated here at all. Because the general rule in both Supreme Court and this court is that a voluntary dismissal with prejudice confers appellate jurisdiction. Baker represents an exception to that because in the class certification context, it undermined the twin purposes of finality, which is avoiding piecemeal appeals and also avoiding delay. Because it took a one-step appeal process into a two-step process. With arbitration, that concern does not exist. When an order compelling arbitration is issued, that issuance automatically starts a path down to step appeal process. Because if even if you allow arbitration to play out, and you and you just prove that the on appeal that the arbitration was improperly ordered, then the subsequent arbitration process is void. And you have to go back to the merits issues. Anyways, before the district court, if any, so if anything, this actually promotes the avoiding delay and avoiding piecemeal twin purposes for finality, because it, it cuts to the chase, it expedites appeal, it doesn't create an extra layer of an other problem that Baker had was the other problem identified in Baker was the one sidedness of allowing a plaintiff to appeal a dismissal, I'm sorry, a denial of class certification. Because the defense didn't have that option. Well, that does not apply in the 1291 context or this context at all, because we are discussing because the defendants always have the are the ability to immediately appeal in order denying a motion to compel arbitration. Yeah, but the council you you've omitted what I thought was the most significant concern for the court in Baker, which was the avoidance of the discretionary mechanism that was set up for an electoral 23. We have the same problem here with 1292 be affording the discretionary mechanism, you're attempting to evade that entirely. And I don't I don't see why Baker with respect to rule 23 f shouldn't apply equally in our case with respect to 1292 be well in Rodriguez cited in our in our brief, this court this it was a denial of a motion to compel motion for class certification. And the court distinguished Baker on the very ground that the defense that the plaintiff did not file a 23 F petition, it wasn't seeking to circumvent a denial of that petition. And also the 23 the 23 F and 1291 interlocutory petitions are very different. One, there's the requirement that plaintiff must seek interlocutory appeal. If that is a requirement coupled with the requirement that a plaintiff cannot circumvent a denial of interlocutory appeal would preclude all voluntary dismissals, conferring appellate jurisdiction. And we know that's not the case, because this court continues to find voluntary dismissals with prejudice to counsel in the Baker concurrence, especially as Thomas held exactly that. Exactly what that a voluntary dismissal eviscerates Article Three standing for appellate purposes. Correct. But and the in the majority had Ginsburg's opinion cited a distinguished this case from past paper from past Supreme Court precedent that allowed voluntary dismissals. It was saying this is not like the our previous precedent that allowed a voluntary dismissal. It that allowed it to confer appellate jurisdiction. This and it that so and that was the Procter and Gamble case cited by the Baker saying and it did not yet. So Baker Ginsburg didn't say that it wasn't that that case no longer good. It actually affirmed that it was still good. It just distinguished it because it didn't undermine the twin purposes of finality. That's the context in which we have to discuss finality is those twin purposes. The Supreme Court and Ninth Circuit are very clear that that those are the the two main concerns and Baker. But what is the case for controversy here? And if you agree to dismiss the the the claims against Verizon? Well, I mean, it would I think that issue was addressed in Contra versus London by this court where it held that if a plaintiff voluntary dismisses with prejudice to expedite an appeal and the and the appeal is successful that those claims become revived. However, if the plaintiff is unsuccessful on appeal, then the dismissal operates as an adjudication on the merits and terminates litigation. That's that's the current president from the court. And if the though, and that's the distinction that has to be made, because we have to, again, analyze jurisdiction in the current finality in the context of those twin purposes, those two purposes are being undermined here, they're being promoted by expediting an appeal. It doesn't. And Armstead is directly on point. And so the issue. So the issue before the court is whether Baker is an arms that are clearly irreconcilable. And they're not because there is that because an order compelling arbitration does not undermine those twin purposes. It does not create piecemeal appeals. piecemeal appeals exist as soon as the court issued the order compelling arbitration, it's set it on a path or piecemeal appeals at that point. And so the other differences between the 1223 F petition and 21 petition, not only that a not only that it was a requirement that plaintiff may seek a interlocutory appeal, coupled with the requirement that a plaintiff can't circumvent a denial would pretty much preclude all voluntary dismissals. Beyond that, it was again, Baker's real concern. The real concern and Baker regarding the 23 F petition wasn't so much the circumventing but was the one sidedness of the circumventing. The court kept referring to that Ginsburg kept referring to the fact that there is that if that there was only one sidedness because the defendants didn't have the ability to appeal the grant of a class certification that doesn't exist here. What do you mean it doesn't exist here if if the court grants the arbitration that defendants wouldn't appeal also so the one sidedness is the same if but if the court denies the motion then they have the ability to appeal. Baker was talking about if the same situation happens with class certification, if it's granted, no one could appeal till the end, but it's denied. The defendants can appeal right away. So it's the same system here. Exactly, Your Honor, and they were trying to create the fairness. They were trying to say, look, we're not going to create a situation where only a plaintiff could appeal a grant, but a defendant can't appeal a denial. But that does it. Allowing appeal would here would make that balance occur that without without allowing a voluntary dismissal, that balance does not exist because that only the defendant has the ability to appeal under Section 16 of the FAA. I'm sorry, I didn't follow you. I didn't understand what you just said. I apologize. So Section 16 of the FAA gives the defendant a direct ability to appeal a denial of a motion to compel arbitration, right? The plaintiff doesn't have that avenue in order to create that balance that the court was referring to in Baker. There needs to be there. That plaintiff needs to be given that avenue. There's no way to balance. What balance? I'm sorry, but what balance are you talking about? This Baker considered the same, essentially the same type of asymmetry. The asymmetry only this asymmetry exists without the voluntary dismissal process because without the voluntary dismissal, then the plaintiff has no has to wait until the marriage is resolved. They don't the defendant has a choice of immediate appeal. The only way the plaintiff can get that immediate appeal is through a voluntary dismissal on class certification. However, the plaintiff does the defendant doesn't have that availability of an immediate appeal for an order granting class certification, and the court was saying, since the defendant doesn't have that ability, we're not going to grant the plaintiff that ability. That concern doesn't exist. Well, the court didn't say that. I mean, the statute said that. And the and there and 23. Well, the court was concerned with the one sidedness, the quote one sidedness of the tactic. That was the that was the issue. That was the issue there. That it was that it created one sidedness by allowing the plaintiff by allowing the plaintiff to do an immediate appeal, but the defendant doesn't have the ability for an immediate appeal on an order to rule. That's what the rule says. The court didn't make up that rule. Right. And I don't. And 20 and 1290 and the FAA doesn't say anything about voluntary dismissals and create being able to do that. It doesn't preclude that. It just says you don't have the ability to immediately appeal. The only immediate appeal of it is for. It's for the defendants in a granting a motion to compel, but I mean, can I hear your argument why Stover doesn't apply? I think you mentioned that at the outset. Yes. So Stover doesn't apply because in. Because it doesn't have a poison pill in Stover, the court was concerned with the fact that. Well, first, let me talk about Blair, because Blair is actually the predecessor in Blair. The court stated that. The if applicable law precludes enforcement, then that claim must be severed. That's what the arbitration clause stated. And since the McGill rule is applicable law that precludes enforcement, the UCL and CLA claims had to be severed. And the court followed this in McCardell versus AT&T in our brief, the Tillage versus Comcast Corp and Roberts versus AT&T Mobility LLC, all cases by this court where the arbitration agreement contained a poison pill identical to that in Verizon's, where it said that if the if the prohibition on class of the class prohibition provision is does not apply. Or is unenforceable, then the entire arbitration agreement doesn't apply. We have the same thing here. We have a poison pill that says that if the. Or the prohibition, but the server says that you have to allege a threat of future harm in order to get that Article three standing for public injunctions, why does that not apply? Because Stover said that's the biggest over justified that inquiry by distinguishing Blair and saying, unlike Blair, the agreement is not unenforceable on its face. It did not have that poison pill that made it unenforceable on its face. The remember we the FAA and the Supreme Court instruct us to follow agreements to according to their terms. The FAA and it says that the agreement to arbitrate will not apply if it is unenforceable. Article three does not apply in the arbitration context. It doesn't make that any. It doesn't make that enforceable. Whether Article three standing exists in this forum has no bearing on whether the article or whether the prohibition set forth in subsection three is can be enforced in arbitration. We have these four cases, Blair, McArdle, Roberts and. And she lies are clear that you don't at if when they rejected the defendant's argument that entitlement to public injunctive relief had to be determined first. Before that, the court said no, we have to follow the agreement as it relates. It said it says unenforceable on its face. It is unenforceable. Also, allowing Stover to. Allowing. Sorry, allowing Article three standing said the end of the way would allow for split decision making between this court and the arbitrator, which isn't allowed under the non severability clause. All right, counsel, you've used up all your time, I'm afraid. So thank you for your argument. We'll hear from counsel. Thank you. And good morning. There are threshold issues that need to be decided here before you get to any of the issues with respect to disposes of this appeal in its entirety. The first question as the panel recognized is, does the court even have jurisdiction in this case? And the answer is no. The second is, does plaintiff have Article three standing given the Stover decision? And the answer to that question also is no. And the third question, which you never get to because the answers to the first two threshold questions are no and no, is even if plaintiff has standing, is public injunctive relief even at issue here, to which the answer also is no. So in the logical order of things, let me start with the jurisdictional argument first. The FAA is extremely clear. And the panel has recognized this and is questioning. We're not here to rewrite the FAA. Under the FAA, if plaintiff seeks review of a decision compelling arbitration, the plaintiff has three choices. Number one, he can seek discretionary 1292B and appeal under that section. Go to the district court, go to the ninth circuit. He didn't do that. Alternatively, he can proceed to arbitration. And at that point, once there's a decision in that arbitration, he can potentially appeal. Or third, he could have gone to the district court and asked for an order dismissing the case. He did none of those things. I understand that he would like to rewrite the FAA, but that isn't an option here. Counselor, in your view then, the only problem that was created was that the plaintiff sought to voluntarily dismiss under Rule 41A. And if instead, I guess I'm just a little puzzled by that answer, because you're saying that if the plaintiff had just said to the court, listen, I'm not asking for voluntary dismissal, but please dismiss this case with prejudice. And if the court had said, okay, now that you're asking me for that, I'll do that on my own, then the appellate jurisdiction problem would be solved? I don't think it would be solved. And in fact, under the Microsoft versus Baker case, I don't think it solves the problem. The fact of the matter is, you cannot avoid the FAA scheme, but there are circumstances under which it's in fact, allow an appeal to proceed. This isn't one of those cases, because it's not a decision on the merits. We are bound by the FAA structure. It's quite clear. Hold on, if the plaintiff voluntarily dismisses the case, asks for voluntary dismissal of the case with prejudice and the court grants it, doesn't that count as a decision on the merits that precludes future litigation on the same claim? Well, that would certainly be our position under the contract case and the Ninth Circuit standard. I don't know the plaintiff would particularly agree with that. I think that's just the law. I don't think that's a debatable point. I pose it as a question, but I don't think it's actually debatable. I guess I don't see your position just seems to create a lot of inefficiency because take a case like Griggs, where the plaintiff simply refused to arbitrate. And then we had to wait for what, a year's time to go by before the court finally then dismissed for failure to prosecute. And it sounds like under your rule, the rule you'd ask us to adopt, we're just going to build in years of additional delay that are totally unnecessary, because that's what the plaintiffs are going to do. They're just going to refuse to arbitrate and sit and do nothing. And then you'll go back to the court at some point and say, Your Honor, they're not making a choice now, but to dismiss with prejudice. And then we know at that point, the plaintiff will be able to get appellate review. Your Honor, that's actually not the rule we're advocating. The rule we're advocating is that the court follow the FAA, which has two explicit paths, which can be pursued. One is a 1292B appeal, a discretionary appeal. And the second alternative is going to depend on the outcome of the arbitration. I mean, I might add that notwithstanding that plaintiff is here claiming that, you know, we're asking for something terribly inefficient. The fact of the matter is, not only is it prescribed by the FAA, what the exact process is, which is what we're asking for. But in addition, plaintiff himself has delayed the proceedings here immeasurably. We're now five years into this case. If plaintiff had followed the appropriate process under the FAA, the efficiency issue would not even be an argument here. Because the fact of the matter is, he could have proceeded to arbitration probably four years ago and had the entire matter resolved, and with no disadvantage to him, because the arbitration clause that Verizon has, and by which his client is bound, actually provides for fee shifting to Verizon under certain circumstances, as well as a minimum $5,000 award. So there was no downside to him. He just didn't do it. And it's the same point with respect to his request for leave to amend. He's had five years to do all of these things. What would have been efficient is for him to pursue his rights under the FAA, and then proceeded if he got the result that he didn't want. Can we hear your argument on standing? Absolutely. So, Your Honor, it is our view that the Stover case actually is dispositive, and that standing here does not exist. The Stover case is quite clear, which is if you don't allege in the pleadings a claim for injunctive relief, then there is no standing. And it basically leverages, as Your Honor knows, off of the Davidson analysis, which looks at the monetary claim and the injunctive relief claim slightly differently. And in that case, in Stover, the plaintiff doesn't have standing to pursue an injunctive relief claim. And of course, the reasoning is set forth in that case. But the court looks at the situation there and concludes that there's no threat of future harm alleged. Indeed, the only request in that case, I'm sorry, yes, and applying that case here, there's no request for an injunction to stop any alleged future harm. One need only look at the complaint in this case to see that the only injunctive relief claims are based upon monetary relief. And that's set out in the complaint in multiple places, including paragraphs 62, 68, 71, 80, 83, 92, and 98. And I'd also note it's made absolutely clear on page 11 of Plaintiff's Opening Brief on Appeal, in which he reiterates that he's seeking an order in joining, that's his injunction claim, Verizon from collecting fees. So... Counsel, what about the request for compelling Verizon to make disclosures to customers purchasing its extended warranty? That does seem like a public injunction. Those disclosures have to go out to the public before they buy it. Well, let me note that that's only in the prayer, and it's nowhere in the charging allegations of the complaint or in any request for relief in the complaint. It's also not even referenced in his Opening Brief on Appeal. In addition, and this is really an issue of public injunctive relief, which was the third question I posed, which is the asking be made? And in that situation, he's not actually seeking public injunctive relief. But I don't know that you even need to go there, given the fact that there's no threat of future harm here, and there's certainly no threat of imminent harm. The case has been going on for five years. He doesn't even allege what the current issue was, as your honors know, are the wipes flushable? And the plaintiff's claim was, if the verbiage is flushable, even if they change the formulation, you won't know when you buy the wipes. Are they now flushable, when they weren't flushable? Here, the disclosures are all set out and can be read. Counsel, it looks like the opposing counsel asked for a remand to amend the complaint. Why should we not grant that? Since Stover only came out, I think, two weeks ago, wouldn't it be fair to allow him a chance to amend the complaint? No. First of all, the case has been ongoing for five years. Davidson came out multiple years ago. If that's what he wanted to do, he could have sought leave to amend then. The issue of public injunctive relief surfaced several years ago, obviously took on air from this court's decisions in Blair and in the Kilgore case. But at the end of the day, he's had multiple years to do this. And let me also add, with respect to Stover and, again, leveraging off of Davidson, plaintiff never alleges that he, in fact, is interested in buying a new plan, which is obviously one of the issues that was looked at in Stover, and this court concluded that because there was no allegation that plaintiff desired to purchase the product, that the plaintiff there was deprived of standing. Can I go back to the Article 3 standing issue real quick? Is there any downside to adopting the concurrence in Baker, the Microsoft versus Baker, where Justice Thomas said that there is no Article 3 standing when a plaintiff voluntarily dismisses a case? There's no downside whatsoever. So Verizon would agree with that, or without reasoning? Your Honor, I'd have to think through the question in every possible context. But in this context, the ability to voluntarily dismiss and then obtain Article 3 standing by doing so is absolutely contrary to the plain language of the FAA and the intended structure here. And frankly, the interest of the court system, because every single time someone loses on an arbitration motion, and a plaintiff loses on an arbitration motion, you just file an appeal, and at the end of the day, your honors are going to be bombarded with these cases of people saying, oh, no, no, you should never have granted that motion. And the entire point of the FAA will be entirely subverted, and the power taken away from the district court to actually make these kinds of decisions and have them only subject to discretionary review. In addition, it subverts the arbitration process, which is intended to be efficient. And the efficiency here is achieved in having a ruling on an arbitration motion and going to arbitration in a timely fashion. So let me just add also on the question of standing and the question of injunctive relief. So, plaintiff also here fails to allege, and this is a much more pure Article 3 analysis without getting into even stober glitches. Plaintiff here fails to allege that the injury here can't be compensated with monetary damages or that there's an inadequate remedy of the law. The patent itself is enough also to deprive him of standing. There is no ability here to prove that there's an irreparable injury without an opportunity for monetary relief. And this is supported by the standard articulated by Ninth Circuit most recently in the Sonner case, which was a 2020 case. And again, as I said before, and this isn't even a stober issue, it's a pure Article 3 question. He can't get an injunction because he's delayed. It's very simple. There's no imminent threat whatsoever. So with that, unless your honors have any questions with respect to jurisdiction or standing, let me just turn to the public injunctive relief issue. You have about 50 seconds, so you have to be brief. I'm going to talk really quickly. I mean, obviously a lot of this has been briefed, but we talked a little bit about that the claim here is relief for monetary damages. The other point on public injunctive relief is that the relief he seeks is on behalf of this defined universe of customers. The only people that would potentially have this claim are people who have signed up for the Verizon product and then purchased this kind of extended warranty coverage. This fits squarely within the McGill articulation of a situation in which it's a private claim and not a public injunctive relief claim. So let me just go back to where I started, which is to say the answer to any one of these three questions, if it's no, the appeal fails. And with that, I've got five seconds. You're over. Yes, thank you. I'm done. Thank you. Much appreciated. Thank you very much. The case just argued is submitted. We'll move to the next case on the calendar, which is United States v. Harinder Singh.
judges: Parker, Watford, Bumatay